UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
LEVON ALEKSANIAN, JAKIR HOSSAIN, and
NEW YORK TAXI WORKERS ALLIANCE,

                         Plaintiffs,

                                       CV-16-4183

 -Against-

                                       COMPLAINT

ANDREW CUOMO, GOVERNOR OF THE STATE
OF NEW YORK,  THE NEW YORK STATE
DEPARTMENT OF LABOR, and ROBERTA
REARDON, as COMMISSIONER OF LABOR,

                        Defendants
-----------------------------------------------------------------x

## PRELIMINARY STATEMENT

1. Plaintiffs bring this case to challenge New York State's refusal to investigate or adjudicate claims for unemployment insurance benefits ("UI") by Plaintiffs Aleksanian and Hossain ("Individual Plaintiffs") and all former drivers for Uber, thereby effectively denying them access to UI, which they need to support themselves and their families while they are unemployed.

2. Generally, the New York State Department of Labor ("DOL") issues a determination regarding a claimant's monetary eligibility for UI based on wages reported by employers to the State of New York.  If the claimant has income which may have been misclassified and/or improperly reported by the employer as earned through independent contract work, the claimant can request that the DOL investigate the alleged misclassification.  When the

   DOL finds that the misclassified independent contractor income was actually earned through covered employment, the DOL will then use that income to determine if the claimant has earned sufficient wages to establish a claim for UI.

3. However, the DOL has neither investigated nor determined the UI claims filed by Individual Plaintiffs and other former Uber workers. Upon information and belief, Governor Andrew Cuomo's office has blocked the DOL from doing so, directing the DOL not to determine whether earnings, which Uber treats as income earned from independent contractor work, are actually wages from covered employment.

4. Due to the DOL's failure to process and determine their claims, the Individual Plaintiffs have been effectively barred from establishing monetary eligibility for UI.

5. By failing to investigate and make a determination on UI claims submitted by former Uber drivers, Defendants are denying Plaintiffs the right to UI benefits in violation of Title III of the Social Security Act of 1935, 42 U.S.C. §§501-504, the Equal Protection Clause of the United States Constitution, and the Due Process Clause of the United States Constitution.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

7. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims herein occurred in this district and the Defendants perform their official duties in this district.

## PARTIES

8. Plaintiff LEVON ALEKSANIAN resides at 69-24 173rd Street, Fresh Meadows, NY 11365.

9. Plaintiff JAKIR HOSSAIN resides at 85-17 167th Street, Jamaica, NY 11432.

10. Plaintiff, NEW YORK TAXI WORKERS ALLIANCE ("NYTWA") is a not-for-profit membership organization with offices located at 31-10 37th Avenue, Suite 300, Long Island City, NY 11101.

11. Defendant ANDREW CUOMO is the Governor of the State of New York.

12. Defendant NEW YORK STATE DEPARTMENT OF LABOR (DOL) is a department of the State of New York existing pursuant to Chapter 31 of the laws of the State of New York. Counsel's office for DOL is located at the Harriman State Office Campus, Building 12, Room 509, Albany, NY 12240. The DOL maintains offices throughout New York City including in Brooklyn and Queens.

13. Defendant ROBERTA REARDON is the Commissioner of Labor for the State of New York.

## STATUTORY AND REGULATORY SCHEME

### "When Due" Clause

14. Title III of the Social Security Act of 1935, 42 U.S.C. §§501-504, provides payments to the states to finance the administration of their unemployment compensation laws. A state is eligible to receive payments only after the Secretary of Labor certifies that its laws meet certain federal requirements, including that:

> the law of such State, approved by the Secretary of Labor under the Federal Unemployment Tax Act [26 U.S.C.A. § 3301 et seq.], includes provision for--

>    (1) Such methods of administration…as are found by the Secretary of Labor to be reasonably calculated to insure full payment of unemployment compensation *when due*….

15. 42 U.S.C. § 503(a)(1) (emphasis added). This section of the Social Security Act is otherwise known as the "when due" provision. The federal regulation interpreting the "when due" provision requires that state unemployment compensation laws provide for "such methods of administration as will reasonably insure the full payment of unemployment benefits to eligible claimants with the greatest promptness that is administratively feasible." 20 C.F.R. §640.3(a).

## Section 1983

16. Section 1983 establishes a private cause of action against any person who acts under color of state law to deprive individuals of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. §1983.

## Unemployment Insurance Benefit Determination Process and Procedure

17. Claimants apply for UI online or by telephone. *See* New York State Department of Labor, Unemployment Insurance, "A Claimant Handbook" (March, 2016) (UI Claimant's Handbook)p. III available at https://www.labor.ny.gov/formsdocs/ui/TC318.3e.pdf . Upon receipt of an application, the DOL makes a Monetary Benefit Determination ("MBD") regarding the claimant's monetary eligibility for unemployment benefits by determining if the claimant has sufficient earnings during a base period representing one year (four calendar quarters) of work and wages. *See* N.Y. Labor Law § 527 and UI Claimant's Handbook p. 7-11. The basic base period is the first four of the last five

completed calendar quarters before the quarter in which the claimant files for benefits. *Id.* If the claimant has not earned sufficient wages in the basic base period, the DOL will use the alternate base period. *Id.* The alternate base period is the last four completed calendar quarters before the quarter in which the claimant files for benefits. *Id.*

18. In order to qualify for unemployment benefits, the claimant must meet three requirements regarding their earnings during the basic or alternate base period. *Id.* First, the claimant must have worked and been paid wages covered by the unemployment insurance law in at least two calendar quarters. *Id.* Second, the claimant must have been paid at least $1,900 in one calendar quarter. *Id.* Third, the total earnings during the base period must be at least 1.5 times the amount paid in the high quarter.[1] *Id.*

19. The MBD is based on wages that have been reported by employers to the New York State Department of Taxation and Finance. N.Y. Tax Law § 171-a; N.Y. Labor Law §§ 527, 590, 597; UI Claimant's Handbook p. 10. If a claimant believes she has been misclassified as an independent contractor by her employer, at the request of the claimant, the DOL investigates the alleged misclassification in order to make a determination as to whether earnings from the putative employer constitute wages which can be used to establish an unemployment benefits claim under the UI law. UI Claimants' Handbook p. 10-11, 43. If the DOL finds that additional wages should be included during the relevant base period, it will issue a revised MBD reflecting the additional wages and benefit rate. *Id.* p. 11.

---

[1] The high quarter wages are capped at $9,350.00 for purposes of determining monetary eligibility.

20. The MBD only establishes monetary eligibility for UI benefits but does not signify that the claimant has been approved for UI benefits. *Id.* p. 10. To be eligible for UI benefits, a claimant must also have lost work through no fault of his/her own; be ready, willing and able to work; and be actively looking for work. N.Y. Labor Law §§ 527, 591, 593. The DOL makes a separate determination approving or denying the claimant's UI benefits called the "initial determination." N.Y. Labor Law §597; UI Claimant's Handbook p. 10.

21. The claimant or the employer can request a hearing to challenge the "initial determination" pursuant to N.Y. Labor Law §620.

22. According to the UI Claimant's Handbook, it takes three to six weeks from the time a claim is filed to the time that claimants generally receive their first payment of benefits. UI Claimants' Handbook p. 14.

**DOL Investigation of Driver Misclassification**

23. The DOL and New York State Unemployment Insurance Appeal Board have consistently found Black Car bases, with similar terms of employment to Uber, to be employers. The Appellate Division of the New York Supreme Court has consistently affirmed these determinations. *See, e.g., Matter of Khan v. Commissioner of Labor*, 66 A.D.3d 1098 (3d Dep't 2009), lv denied 13 N.Y.3d 717 (2010) (finding that a Black Car base was an employer where it paid its drivers a set commission per fare, dispatched trips to drivers specifying pick-up and drop-off locations, set all fare rates, and handled all billing); *Matter of Automotive Services v. Commissioner of Labor*, 56 AD.3d 854 (3d Dep't 2008), (finding a Black Car base exercised sufficient control over drivers' work where it paid drivers a percentage commission, provided dispatch information, told drivers to hold

signs with the company's name, specified acceptable cars for use with the company, handled the customer complaint process and dictated how long in advance a driver should arrive at a pick-up spot); *In re B.S.M. Limousines Corp.*, 143 A.D.2d 459 (3d Dep't 1988), lv denied 73 N.Y.2d 703 (1988) (finding a limousine company to be an employer even where its drivers were free to refuse work, and were allowed to compete for business with the employer); *Matter of Spectacular Limo Link, Inc. (Commissioner of Labor)*, 21 AD3d 1172 (2005)(finding a limousine company to be an employer where drivers were assigned jobs, told where and when to go, set rates that passengers were changed, handled billing, collection of fares, and customer complaints).

## STATEMENT OF FACTS

24. Individual Plaintiffs worked as drivers for Uber in New York City. Individual plaintiffs lost their employment with Uber and applied for UI.

25. Uber is a corporation offering Black Car transportation service. Uber's New York City operations are dispatched through several wholly owned subsidiaries which hold a Taxi & Limousine Commission (TLC) issued license to operate a For-Hire Vehicle (FHV) Base that dispatches "Black Cars," a sub-category of FHV service.

26. Individual Plaintiffs' primary job duty was to drive Uber customers from a pick-up point to a drop-off point in the City of New York and the surrounding areas. Individual Plaintiffs received assignments through the use of the Uber application (hereinafter "app") on their cell phones.

27. Uber does not consider the Individual Plaintiffs or any of its drivers to be employees even though Uber exercises substantial supervision, direction, and control over its drivers.

28. Uber drivers must provide Uber with proof of commercial insurance. Uber will only allow its drivers to drive certain kinds of vehicles.

29. Uber directs drivers to specific customers and instructs its drivers to wait for set amounts of time before starting the in-app meter or cancelling a trip, and drivers are subject to discipline if they fail to do so.

30. Uber controls how and whether drivers can accept tips. Uber prohibits drivers from accepting cash, even stating that accepting cash can put a driver at risk of immediate deactivation. Uber generally frowns upon tipping, telling its customers that, there is no need to tip, but offers drivers detailed instructions on how to first deny, and then graciously accept a tip. Uber maintains strict supervision of this policy, monitoring driver acceptance of cash, and assuring that any tipping happens under the terms of its policy.

31. Uber unilaterally sets the rate of car fare for all trips, and the amount of the commission or "service fee" that Uber takes from each fare. Payments by customers are received and processed by Uber. Uber pays drivers at the end of each week, after taking a 20-28% commission on each fare, and deducting sales tax and a worker's compensation surcharge from the remainder of the driver's share.

32. Uber drivers are expected to accept at least 90% of trip requests by customers in order to continue to drive for Uber. Uber expects drivers to accept dispatches, even when it dispatches work that would be illegal for drivers to perform under state and local laws. Notably, Plaintiff Hossain received a $1500 summons from the Nassau County Taxi & Limousine Commission after performing a trip within Nassau County, as directed by Uber.

33. Uber drivers are also subject to discipline if they accept but then cancel too many trips. Plaintiff Hossain received e-mails threatening deactivation of his account (that is, suspension or termination of employment) if he did not improve his cancellation rate.

34. When a passenger makes a complaint about a specific driver, this information is submitted to Uber through the app; the driver does not see the complaint and drivers do not know which customers have given them which ratings. At the end of a payment period, Uber emails each driver a summary of their week's performance, telling them their average rating for the week, the number of five-star ratings received, and suggestions for improvement. Specific incidents may lead Uber to contact the driver immediately, for further investigation or immediate deactivation of a driver's account.

35. Negative reviews from passengers form the main basis for driver discipline, including suspension or termination imposed *by Uber*. Uber's driver handbook tells drivers that "You're likely to be deactivated" if ratings fall below 4.5 stars.

36. Uber also controls the type of work and access to jobs that drivers receive through a system of rewards based on passenger ratings. Drivers who, after a certain amount of time driving for Uber, receive high ratings effectively receive promotions, as they become eligible for more categories of trips. Based on passenger-provided positive rankings, Uber rewards drivers by upgrading their status to allow drivers more opportunities to pick up passengers and to pick up more lucrative classes of passengers; these opportunities are not available to drivers with lower ratings.

37. Drivers who receive low ratings will be deactivated from the app temporarily or permanently. Plaintiff Hossain was suspended after receiving an average rating below

4.5. He paid $100 to attend a training course, after which Uber reinstated his account. When, after this reinstatement, his rating did not rise, Uber permanently terminated his employment.

38. Because it provides dispatch information, designates the amount of wait time, dictates a tipping policy, handles all customer complaints and billing, and unilaterally sets fare rates and drivers pay rates, Uber falls within the definition of employer established under the longstanding DOL and court precedent discussed *supra*.

39. Given the established precedent governing such claims, there is no reason why DOL cannot itself promptly investigate and determine whether Individual Plaintiffs and other Uber workers are employees whose earnings may make them eligible for UI.

40. However, despite the settled case law regarding drivers for Black Car companies, upon information and belief, Defendant Cuomo's office has directed the DOL not to investigate or adjudicate UI claims by Uber drivers while Defendant Cuomo's office engages in an unexplained, indefinitely prolonged and open-ended review.

## PLAINTIFF LEVON ALEKSANIAN

41. Plaintiff Levon Aleksanian was a driver for Uber from August, 2014 through September 7, 2015.

42. When Plaintiff Aleksanian first started driving for Uber, he had to use a device provided by Uber for which he was charged $10.00 per week. The device provided by Uber could not be used for any purpose other than to use the Uber app. Starting in 2015, he downloaded the Uber App to his personal phone, and no longer used the device provided by Uber.

43. In 2014, Plaintiff Aleksanian drove for Uber between five and seven days a week. Starting in 2015, Plaintiff usually drove for Uber seven days a week.

44. Plaintiff Aleksanian drove approximately eight to ten hours a day for Uber. Except for a brief period in August, 2014, Plaintiff Aleksanian drove exclusively for Uber and did not perform work for any other company.

45. Plaintiff Aleksanian grossed approximately $1,500 a week from his work for Uber. After fees paid to Uber, sales tax and Black Car Drivers Workers Compensation Fund fees deducted from his pay by Uber, and other expenses including gas and car maintenance, he netted approximately $550-$700 per week.

46. On September 9, 2015 at 12:24 a.m., Plaintiff Aleksanian received a text message on his cell phone from Uber which stated:

> Your account is temporarily waitlisted because your TLC license 5389581 is not listed on the TLC OPENDATA website. Please visit the TLC (third floor) to resolve the issue. If this is not your TLC license or if you recently passed a vehicle inspection, please visit us first to update your document.

47. When Plaintiff Aleksanian attempted to log in to the Uber App on September 9, 2015, he found that his account had been deactivated.

48. On or about September 9, 2015, Plaintiff Aleksanian went to the TLC to inquire about his TLC license and was told that it had been revoked. Prior to September 9, 2015, Plaintiff Aleksanian did not know that his TLC license had been revoked.

49. On or about September 14, 2015, Plaintiff Aleksanian applied for UI by submitting an online application on the website of the DOL from his home in Queens, New York.

50. Within a week or two after applying for UI, Plaintiff Aleksanian received a MBD from the DOL which notified him that he did not have sufficient wages to establish a UI claim. The MBD did not include wages from his prior employers, Corporate Transportation Group and Uber. After receiving the MBD, Mr. Aleksanian submitted to DOL proof of wages received from Corporate Transportation Group and Uber on a standard form requesting that the DOL reconsider its prior MBD. The DOL then sent the claimant questionnaires regarding his former employers. The questionnaires asked Mr. Aleksanian a series of questions including questions pertaining to whether he was an employee or an independent contractor for his former employers. Plaintiff Aleksanian answered the questions and returned the questionnaires to DOL in September and October, 2015. Plaintiff e-mailed his questionnaire regarding his employment with Uber by emailing it to Karen Schapley, a Labor Services Representative from the DOL, on October 27, 2015.

51. On November 16, 2015, Plaintiff Aleksanian sent an e-mail to Ms. Schapley asking why his case was still pending when he had applied for UI benefits two months prior.

52. Ms. Schapley replied the following day, and provided a timeframe for the DOL's investigation of Mr. Aleksanian's claim. That e-mail read:

It is still being worked on. Requested additional information went to the employer on 10/23, and they put a 30 day follow up for that and then it could be possibly another 10 days after that. BUT It could be done before that. Just continue to certify for each week you want to claim benefits….

53. In line with the 40-day timeframe Ms. Schapley had provided, Plaintiff Aleksanian received a revised MBD from the Department of Labor dated December 3, 2015. The

MBD stated that "our records show that in the base period indicated you do not have the required employment and earnings to establish an unemployment insurance claim." The December 3, 2015 notice also stated that Plaintiff's base period employment with "Corporate Transportation Group LTD" cannot be used to establish entitlement pursuant to Section(s) 511 of the New York State Unemployment Insurance Law because the services performed were considered to be those of an independent contractor. In addition, the December 3, 2015 notice stated "we are still working on UBER Technologies."

54. After receiving the December 3, 2015 notice stating that the DOL was still working on his UI claim as it related to Uber, Plaintiff Aleksanian expected that he would receive another notice regarding whether his Uber earnings would make him eligible for UI, consistent with the December 3, 2015 notice.

55. When Plaintiff Aleksanian did not hear back from the DOL, he called the DOL to find out why he had not received any further notice regarding his UI claim for benefits. He reached out to the DOL several times to find out about the status of his UI application.

56. On February 10, 2016, Ms. Schapley sent an email to Plaintiff Aleksanian which stated the following:

I received your telephone message (2/9/16 4:42 pm). I have gone to my supervisor with your concern, and we went to our manager. He contacted our Director for an explanation regarding the situation with Uber. The information that was given to us was that it is not within the NYS Unemployment Insurance Division to make the decision as to whether the wages with Uber can be used in a claim. That is a separate division and that, right now, it is under Executive review. All Uber claims we have are under Executive review. Once that decision is made and we are given it, we can complete your claim. Please continue to certify for each week you wish to claim benefits.

57. The claimant wrote back to Ms. Schapley later that day asking who was doing the executive review and asked to speak with Ms. Schapley's supervisor or manager.

58. Lori Mocniak, the Supervising Labor Services Representative for DOL, responded to Plaintiff Aleksanian's email on February 10, 2016 and stated:

> I understand you are frustrated over this process. Unfortunately, there is nothing new I can tell you. I have discussed claims filed against UBER with my manager and the Director of our call center. The information we are being given is these claims (not just yours) are under executive review, which means the Dept of Labor is not making the decision whether or not this employment is covered. Your claim will remain pending until such time a determination has been made.

59. After obtaining counsel, on May 2, 2016 Mr. Aleksanian requested a hearing to challenge the monetary determination dated December 3, 2015 classifying his earnings from Corporate Transportation Inc. as earnings from work as an independent contractor. In a letter dated May 18, 2016 to Plaintiff Aleksanian, the DOL stated that the Commissioner of Labor was withdrawing the December 3, 2015 determination in order to conduct further fact finding. No new determination has been issued up to the current date of this complaint.

60. Mr. Aleksanian cannot ask for a hearing on his UI application because there has been no determination made upon which he could appeal. It has now been 10 months since he made his initial claim for benefits.

61. Until late May, 2016 when he began working part-time as a home health aide, Mr. Aleksanian was completely unemployed.

62. Mr. Aleksanian has a wife and baby to support. In order to cover his family's living expenses while unemployed, Mr. Aleksanian borrowed money through his credit cards, accruing over $6,000 in debt.

### PLAINTIFF JAKIR HOSSAIN

63. Plaintiff Jakir Hossain was a driver for Uber from January, 2016 until April 25, 2016.

64. Plaintiff Hossain usually drove 5 to 6 days a week, approximately 45 hours per week. From December 2015 until March 22, 2016, Mr. Hossain worked for both Uber and Lyft, another car service. From March 22, 2016 until April 25, 2016, Plaintiff Hossain worked exclusively for Uber.

65. Plaintiff Hossain leased a vehicle through an "Uber-approved" broker in order to work for Uber; thereafter Uber deducted $415 from his weekly payments for the lease of the vehicle.

66. Plaintiff Hossain's earnings varied widely; at times he grossed $1500 per week when Uber paid him a guaranteed weekly wage; at other times, he earned less than $500, before accounting for his expenses.

67. Plaintiff Hossain was terminated by Uber on April 25, 2015. Hossain received an e-mail that read:

> We are writing to inform you that your account has been permanently deactivated due to repeated issues with low ratings or feedback received from riders. Providing quality trips to riders is important.

68. Plaintiff Hossain applied for UI benefits on or about May 2, 2015 by submitting an on-line application on the website of the DOL from the offices of his attorneys in Brooklyn, New York.

69. Plaintiff received an MBD dated May 12, 2016 which stated that he did not have sufficient wages to qualify monetarily for UI benefits. The May 12, 2016 MBD failed to list the wages that he received from his work for Lyft and for Uber.

70. On or about May 24, 2016, Plaintiff Hossain submitted a Request for Reconsideration of the May 12, 2016 MBD which contained proof of his earnings for Lyft and Uber.

71. On or about May 27, 2016, Plaintiff Hossain received a letter from the DOL asking him to contact the telephone claims center "to add employer Uber." The Plaintiff contacted the telephone claims center and told them that he had provided proof of his Uber earnings.

72. Plaintiff Hossain has not received any further communication or any determination from the DOL on his UI claim.

73. While waiting for the DOL to process his claim, Mr. Hossain remained completely unemployed until early July 2016, when he began working in a pharmaceuticals factory.

74. While he was unemployed, Mr. Hossain had to borrow $2000 from his roommates and incurred $1000 in credit card debt in order to pay his rent and pay for food.

## PLAINTIFF NYTWA

75. NYTWA works to ensure the fair treatment of its member drivers and to promote the dignity of all workers in the taxi, limousine, and Black car industries in New York.

76. NYTWA counts among its 19,000 members more than 5,000 Uber drivers. Both Individual Plaintiffs are NYTWA members.

77. NYTWA staff assist members with issues related to their work in the for-hire transportation industry and also offer assistance to members who need other social

services, including guiding workers through their claims for benefits such as Workers Compensation. NYTWA staff have spent time and resources in evaluating the individual plaintiffs' claims for UI benefits and referring them to counsel.

### FIRST CAUSE OF ACTION
### VIOLATION OF "WHEN DUE" CLAUSE

78. New York State is refusing to investigate or adjudicate Individual Plaintiffs' applications for UI benefits and all applications for UI benefits from former Uber drivers.

79. Title III of the Social Security Act of 1935, 42 U.S.C. §§501-504, and 20 C.F.R. §640.3(a) which require that state unemployment compensation laws provide for such methods of administration as will reasonably insure the full payment of unemployment benefits to eligible claimants when due and with the greatest promptness that is administratively feasible.

80. By refusing to investigate and/or adjudicate Individual Plaintiffs' UI applications, Defendants are failing to insure the full payment of UI benefits when due and with the greatest promptness that is administratively feasible. Therefore, the Defendants are violating 42 U.S.C. §§501-504 and 20 C.F.R. §640.3(a).

81. As a result of the Defendants' violation of 42 U.S.C. §§501-504 and 20 C.F.R. §640.3(a), the Court should order that the Defendants immediately investigate and adjudicate Individual Plaintiffs' and all Uber drivers' applications and claims for UI benefits.

### SECOND CAUSE OF ACTION
### VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE UNITED STATES CONSTITUTION

82. The State of New York investigates and adjudicates UI claims for all claimants who have applied for UI from the State of New York but has failed to investigate the UI applications of Plaintiffs and other former Uber drivers.

83. Under the Fourteenth Amendment, Section 1 of the Constitution of the United States, no state shall deny to any person within its jurisdiction the equal protection of the laws.

84. By failing to investigate and adjudicate the Individual Plaintiffs' UI applications as well as the UI applications of all Uber drivers while at the same time investigating and adjudicating UI applications of all other UI applicants in the State of New York who may have been misclassified as independent contractors, the Defendants are denying the Plaintiffs equal protection of the laws.

85. As a result of the Defendants violation of Fourteenth Amendment, Section 1 of the Constitution of the United States, the Court should order that the Defendants immediately investigate and adjudicate Individual Plaintiffs' and all Uber drivers' applications and claims for UI benefits.

### THIRD CAUSE OF ACTION
### VIOLATION OF DUE PROCESS CLAUSE OF THE UNITED STATES CONSTITUTION

86. Under the Fourteenth Amendment, Section 1 of the Constitution of the United States, no state shall deprive any person of life, liberty, or property, without due process of law.

87. Defendants are failing to investigate and/or adjudicate Individual Plaintiffs' UI applications as well as UI applications for all Uber drivers. Since Individual Plaintiffs and all Uber drivers who have applied for UI have not received determinations on their

UI claims, they have no administrative avenue to appeal or otherwise contest the effective denial of their applications for UI benefits.

88. By failing to investigate and adjudicate the Plaintiffs' UI applications because they are former Uber drivers and because the State of New York has failed to investigate and adjudicate all UI applications from former Uber drivers, the Defendants are denying the Plaintiffs UI benefits without due process of law.

89. As a result of the Defendants' violation of the Due Process Clause of the U.S. Constitution, the Court should order that the Defendants immediately investigate and adjudicate Individual Plaintiffs' and all Uber drivers' applications and claims for UI benefits.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs request that this Court enter a final judgment:

(1) Ordering the Defendants to immediately investigate and adjudicate Individual Plaintiffs' and all Uber drivers' applications and claims for UI benefits;

(2) Declaring that Defendants' actions in failing to investigate and adjudicate Individual Plaintiffs' and all Uber drivers' applications and claims for UI benefits violate Title III of the Social Security Act of 1935, 42 U.S.C. §§501-504, the Equal Protection Clause of the United States Constitution, and the Due Process Clause of the United States Constitution;

(3) Awarding reasonable attorneys' fees, together with costs and disbursements; and

(4)  Granting such other and further relief as the Court may deem just and proper.

Dated: July 28, 2016

                                        Respectfully submitted,

                                        */s/ Nicole Salk*
                                        BROOKLYN LEGAL SERVICES
                                        Attorneys for Plaintiffs
                                        105 Court Street, 3rd floor
                                        Brooklyn, NY 11201
                                        (718) 237-5500/5544
                                        Fax (718) 237-5544

BY:   Nicole Salk (NS 0524)